STATE OF MAINE  
CUMBERLAND, ss.

SUPERIOR COURT  
CIVIL ACTION  
DOCKET NO: CV-09-690  

OLENA PYLYPENKO,

Plaintiff,

v.

JEFFREY BENNETT and  
DARLENE COPP

Defendants

**ORDER ON DEFENDANTS'  
MOTIONS TO DISMISS AND  
SPECIAL MOTIONS TO DISMISS  
PURSUANT TO 14 M.R.S. § 556**

STATE OF MAINE  
Cumberland, SS. Clerk's Office

FEB 2 3 2011

RECEIVED

Plaintiff Olena Pylypenko brought this action against attorney Jeffrey Bennett and Darlene Copp alleging defamation, intentional infliction of emotional distress, malicious prosecution, and false imprisonment. The defendants have filed motions for dismissal, and have filed special motions to dismiss pursuant to 14 M.R.S.A. § 556 (2009), Maine's so-called anti-SLAPP[1] statute.

## BACKGROUND

This is the latest legal battle spawned by the storied divorce of Scott Liberty and Darlene Copp. Plaintiff Olena Pylypenko, a Ukrainian-born United States citizen, is Scott Liberty's current wife. Her claims arise from three events involving Mr. Liberty and Ms. Copp's middle daughter, Cassandra Liberty, which occurred in the fall of 2008. Ms. Copp has sole custody of Cassandra

---

[1] SLAPP is an acronym for "Strategic Lawsuit Against Public Participation," and was coined by George W. Pring and Penelope Canan. *Duracraft Corp. v. Holmes Products Corp.*, 427 Mass. 156, 160 n.7, 691 N.E.2d 935, 939 n.7 (Mass. 1998) (citing Pring & Canan, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envt.l L. Rev. 3, 4 (1989)).

1

Liberty. First, Ms. Pylypenko alleges that Mr. Bennett and Ms. Copp told Cassandra Liberty that Ms. Pylypenko: was a mail-order bride who had paid Mr. Liberty for a sham marriage; was a stripper; was a prostitute; and had engaged in sexual acts with Scott Liberty's uncle, Michael Liberty. (Pl.'s Complaint ¶¶ 32, 36.)

The second event occurred on or around October 30, 2008. That morning, Cassandra Liberty ran away from Ms. Copp's home. Ms. Copp testifies that she saw Ms. Pylypenko waiting outside the home in her car, and that Ms. Pylypenko drove away when confronted. (Copp Aff. ¶ 61.) Ms. Copp then reported the incident to the Falmouth Police. (Copp Aff. ¶ 62.) An officer stopped Ms. Pylypenko on Route 100 in Falmouth, questioned her about Cassandra, and searched her vehicle. (Pylypenko Aff. ¶ 11.) Ms. Pylypenko denies driving by the home on that date. (Pylypenko Aff. ¶¶ 9–10.)

The third and final event occurred on the night of November 30, 2008. Ms. Copp testifies that around 9:00 p.m. she heard her front-door alarm go off. (Copp Aff. ¶ 71.) On investigating, she witnessed Cassandra run toward a car parked at the end of the driveway and get into the passenger seat. (Copp Aff. ¶ 71.) Ms. Copp also ran to the car and grabbed the steering wheel through the open driver's side window. (Copp Aff. ¶ 71.) The car began to drive away, dragging Ms. Copp for some distance until she fell. (Copp Aff. ¶ 71.) When police arrived, Ms. Copp told them that Ms. Pylypenko had been driving the car. (Copp Aff. ¶¶ 71–72.)

Police immediately began an investigation, and later that evening went to Ms. Pylypenko's home to question her and search for Cassandra Liberty. (Pylypenko Aff. ¶ 19.) Ms. Pylypenko told them that she had been at a friend's

2

home in Portland at the time Cassandra Liberty left Ms. Copp's residence. (Pylypenko Aff. ¶¶ 16, 19.) The police left Ms. Pylypenko that evening, but she was later charged with reckless conduct for dragging Ms. Copp with her car. (Pylypenko Aff. ¶ 20.) Ms. Pylypenko missed her arraignment because the summons was mailed to the incorrect address, and she was later arrested for this failure to appear. (Pylypenko Aff. ¶¶ 20–21.) She hired an attorney and the case was dismissed, but only after she incurred $7,500 in legal fees. (Pylypenko Aff. ¶ 23.)

On December 31, 2009, two weeks after obtaining her United States citizenship, Ms. Pylypenko filed a four-count complaint against Mr. Bennett and Ms. Copp. Count I accuses the defendants of defamation and invasion of privacy due to the statements allegedly made to Cassandra Liberty and the accusations of criminal conduct. Count II asserts that these statements and Ms. Copp's police reports constitute intentional infliction of emotional distress. Count III focuses on the police reports and accuses the defendants of malicious prosecution, while Count IV asserts a claim for false imprisonment stemming from Ms. Pylypenko's arrest. On February 16, 2010, Mr. Bennett and Ms. Copp each filed a special motion to dismiss pursuant to 14 M.R.S.A. § 556,[2] and a motion to dismiss pursuant to Rule 12(b)(6).

## DISCUSSION

As a preliminary matter, the court must determine the order in which to proceed on the defendants' motions. Motions for dismissal are generally decided solely on the pleadings, and are converted into motions for summary judgment if the court considers extraneous material. M.R. Civ. P. 12(b); *Moody v. State Liquor*

---

[2] Ms. Copp excludes Count I from her special motion to dismiss.

3

*& Lottery Comm'n*, 2004 ME 20, ¶¶ 8–9, 843 A.2d 43, 47–48. In contrast, section 556 special motions require the court to examine both the pleadings and supporting affidavits. *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 20, 772 A.2d 842, 849. As treatment of the special motions requires the court to consider material outside the pleadings, the court will address the Rule 12(b)(6) motions first.

## I. The Defendants' Motions to Dismiss

While each defendant has filed a separate motion to dismiss, the allegations against them are identical and arise from the same basic facts. Their motions will therefore be treated together.

"A motion to dismiss tests the legal sufficiency of the complaint." *Heber v. Lucerne-in-Maine Village Corp.*, 2000 ME 137, ¶ 7, 755 A.2d 1064, 1066 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)). The Court examines "the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* (quoting *McAfee*, 637 A.2d at 465). "For purposes of a 12(b)(6) motion, the material allegations of the complaint must be taken as admitted." *McAfee*, 637 A.2d at 465. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is entitled to no relief under any set of facts that [s]he might prove in support of [her] claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244, 1245–46.

## 1. Count I: Defamation & Invasion of Privacy

The plaintiff's Count I accuses both Mr. Bennett and Ms. Copp of defamation and invasion of privacy. Defamation consists of:

> (a) a false and defamatory statement concerning another;
> (b) an unprivileged publication to a third party;
> (c) fault amounting at least to negligence on the part of the publisher; and

4

> (d) either actionability of the statement irrespective of special
> harm or the existence of special harm caused by the publication.

*Lester v. Powers*, 596 A.2d 65, 69 (Me. 1991) (adopting Restatement (Second) of Torts § 558 (1977)). The term "publication" is a term of art that refers to any intentional or negligent communication to a third party. Restatement (Second) of Torts § 577 (1977); *see Cole v. Chandler*, 2000 ME 104, ¶ 17, 752 A.2d 1189, 1197 (comparing "publication" required for defamation to the "publicity" requirement of invasion of privacy).

Ms. Pylypenko's complaint alleges that Mr. Bennett and Ms. Copp intentionally told Cassandra Liberty that Ms. Pylypenko's marriage was a sham, that she was a mail-order bride who had paid to get married, that she was a stripper and a prostitute, and that she had a sexual relationship with Michael Liberty. (Pl.'s Compl. ¶ 32.) It also alleges that the defendants communicated to police that Ms. Pylypenko was a kidnapper who had assaulted Ms. Copp. (Pl.'s Compl. ¶ 34.) They allegedly knew that these statements were false when they made them. (Pl.'s Compl. ¶¶ 33–34.) The statements concern sexual and criminal misconduct, so they are actionable per se. Restatement (Second) of Torts §§ 571, 574 (1977). These allegations make out a prima facie case of defamation.

Mr. Bennett and Ms. Copp both claim that the alleged statements were privileged, though on different grounds. Mr. Bennett argues that any of his alleged statements were made in the context of his attorney-client relationship with Ms. Copp and therefore should be privileged under section 586 of te Restatement (Second) of Torts. Section 586 privileges defamatory material that an attorney publishes during the lead-up to, "institution of, or during the course and as part of, a judicial proceeding in which he participates as counsel, if it has

5

some relation to the proceeding." Restatement (Second) of Torts § 586 (1977). The privilege only extends to attorneys while they are acting as such. *Id.* cmt. c.

Maine has recognized that defamatory "allegations made in pleadings are absolutely privileged," as are statements made by witnesses during testimony. *Dineen v. Daughan*, 381 A.2d 663, 664 (Me. 1978). Attorneys are also privileged to assert defamatory statements in motions so long as the statements are relevant to the judicial proceeding. *Id.* at 664–65; *see Tanguay v. Asen*, 1998 ME 277, ¶ 7, 722 A.2d 49, 50 (recognizing that a potentially defamatory statement made to the parties' child in a divorce proceeding fell within "at least a qualified privilege of counsel to inquire and develop evidence relevant to" a proceeding). While Maine has not explicitly adopted section 586, the protections it has recognized are comparable.

The question here, however, is whether any privilege is apparent from the pleadings. There is none. Whatever privilege may ultimately apply to Mr. Bennett's statements, the complaint does not show that he spoke in his capacity as an attorney. To the contrary, the complaint alleges that Mr. Bennett slandered the plaintiff's character to Cassandra Liberty because he wanted to exert personal control over her and to degrade Ms. Pylypenko. (Pl.'s Compl. ¶¶ 15, 27–28, 32.) Accepting the plaintiff's allegations as true and drawing all reasonable inferences in her favor, the pleadings do not indicate that Mr. Bennett published the statements pursuant to a privilege. Ms. Pylypenko has alleged a prima facie claim for defamation sufficient to survive Mr. Bennett's Rule 12(b)(6) motion to dismiss.

Ms. Copp seeks the shelter of two different privileges. The first is the privilege accorded to statements made to law enforcement or regulatory

6

agencies. *Truman v. Brown*, 2001 ME 182, ¶ 15, 788 A.2d 168, 172. Such statements are privileged so long as they are made in the good-faith belief "that that the statement is true and indicates that a statutory standard administered by the agency may have been violated." *Id.* In this case the complaint alleges that Ms. Copp communicated with law enforcement in bad faith, so the privilege does not apply. (Pl.'s Compl. ¶ 38.)

Ms. Copp's second asserted privilege is a parent-child privilege not-yet recognized in Maine. She cites section 597 of the Restatement (Second) of Torts, which grants a conditional privilege when "circumstances induce a correct or reasonable belief that (a) there is information that affects the well-being of a member of the immediate family of the publisher, and (b) the recipient's knowledge of the defamatory matter will be of service in the lawful protection of the" family-member's well-being. Ms. Copp contends that any alleged statements she made to Cassandra Liberty were attempts to protect Ms. Liberty from herself during her emancipation proceedings.

Even if the court were to recognize this privilege, the complaint alleges that Ms. Copp made the statements knowing they were false. (Pl.'s Compl. ¶¶ 36–38.) This obviates the privilege by section 597's own terms. It also constitutes abuse of a privilege under Restatement (Second) of Torts section 600. Finally, Ms. Copp's discussion of Maine Rule of Evidence 504, the spousal testimonial privilege, is irrelevant in this context. Ms. Copp has not shown that Ms. Pylypenko's pleading is deficient, and Count I for defamation survives.

The plaintiff's claims for invasion of privacy are not so fortunate. A claim for invasion of privacy lies when the plaintiff shows that the defendant: "(1) intruded upon her physical and mental solitude or seclusion, (2) publicly

7

disclosed private facts, (3) placed her in a false light in the public eye, or (4) appropriated her name or likeness for the [defendant's] benefit. Each of these interests in privacy is distinct and is subject to different kinds of invasion." *Loe v. Thomaston*, 600 A.2d 1090, 1093 (Me. 1991) (citations omitted).

Ms. Pylypenko accuses the defendants of publicly disclosing private facts about her and placing her in a false light. Both of these claims require the defendants to have publicized the objectionable material. *Id.* (public disclosure); *Chandler*, 2000 ME 104, ¶ 17, 752 A.2d at 1197 (false light). Unlike the publication requirement of defamation, the publicity required to maintain a claim for invasion of privacy requires the defendant to have made the matter public "by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Chandler*, 2000 ME 104, ¶ 17, 752 A.2d at 1197 (quoting Restatement (Second) of Torts § 652D cmt. a (1977)). Ms. Pylypenko's complaint alleges that the defamatory statements were communicated to Cassandra Liberty and possibly someone at the Falmouth Police. (Pl.'s Compl. ¶¶ 33–34.) Such a limited audience falls short of generating the "public knowledge" required to maintain her claims, and they are dismissed.

2.    Count II: Intentional Infliction of Emotional Distress

In order for Ms. Pylypenko's claim for intentional infliction of emotional distress to survive, she must show:

> (1) the defendants "intentionally or recklessly inflicted severe emotional distress or [were] certain or substantially certain that such distress would result from [their] conduct"; (2) the "conduct was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) the actions of the defendants caused . . . emotional distress; and (4) [Ms. Pylypenko] suffered

8

emotional distress "so severe that no reasonable [person] could be expected to endure it."

*Loe*, 600 A.2d at 1093 (quoting *Finn v. Lipman*, 526 A.2d 1380, 1382 (Me. 1987)).

Ms. Pylypenko claims that the defendants' allegedly false statements to Cassandra Liberty, coupled with the allegedly false police reports, constituted outrageous conduct and caused her emotional distress including "humiliation, anxiety, distraction and loss of reputation." (Pl.'s Compl. ¶ 57.) Assuming that her distress is severe, Ms. Pylypenko's claim cannot survive unless the alleged conduct was extreme and outrageous as a matter of law. *See Colford v. Chubb Life Co. of Am.*, 687 A.2d 609, 616 (Me. 1996) (court must determine whether conduct could reasonably be deemed sufficiently extreme and outrageous to incur liability).

The Law Court has ruled that filing a police report, even if done without justification, does not "exceed all possible bounds of decency" and will not support a claim for emotional distress. *Holland v. Sebunya*, 2000 ME 160, ¶ 17, 759 A.2d 205, 212. Insulting or abusive language has likewise been found short of the extreme and outrageous conduct required. *Botka v. S.C. Noyes & Co.*, 2003 ME 128, ¶¶ 6, 10, 19, 834 A.2d 947, 950–52; *see Yurick v. Superior Court*, 209 Cal. App. 3d 1116, 1123 (Cal. App. 3d Dist. 1989), disapproved on another point in *Carmichael v. Alfano Temp. Pers.*, 233 Cal. App. 3d 1126, 1130 (Cal. App. 4th Dist. 1991); Restatement (Second) of Torts § 46 cmt. d (1965) ("The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.")

Ms. Pylypenko's claim rests on two allegedly baseless police reports and a series of insulting statements made to Cassandra Liberty. None of these instances alone would be enough to support her claim. Ms. Pylypenko argues that together

9

they form a pattern of outrageous conduct, but three discrete instances do not transcend the realm of annoyances that a reasonable person could be expected to endure. *See Loe*, 600 A.2d at 1093. Slanderous statements made to one person, while distressing, are commonplace enough such that an "ordinarily sensitive person" should be able to cope with the aggravation they engender. *See Holland*, 2000 ME 160, ¶ 18, 759 A.2d at 212. The same can be said of being stopped by police and accused of a crime. *Id.* Any harm caused by such behavior is recoverable under the theories of slander and malicious prosecution. This uncivil behavior, even taken together, is insufficiently outrageous to support the separate claim of intentional infliction of emotional distress.[3] Ms. Pylypenko's Count II is dismissed as against both defendants.

3. Count III: Malicious Prosecution

The defendants will be liable for malicious prosecution if Ms. Pylypenko shows that a criminal complaint was "(1) instituted [or continued] against [her] without probable cause, (2) with malice, and (3) that [she] received a favorable termination of the proceedings." *Holland*, 2000 ME 160 ¶ 20, 759 A.2d 205, 212–13 (quoting *Gray v. State*, 624 A.2d 479, 483 (Me. 1993)). "Probable cause is an objective standard that" asks whether the defendants had reasonable grounds to justify their actions. *Id.* ¶ 20, 759 A.2d at 213. "Reasonable grounds are grounds sufficient to justify a man who was calm, and not governed by passion, prejudice or want of ordinary caution and care, in believing the party guilty." *Id.* (quoting *Price v. Patterson*, 606 A.2d 783, 785 (Me. 1992)).

---

[3] At hearing, Ms. Pylypenko's counsel discussed other actions the defendants had allegedly taken against individuals not party to this litigation. The court will not consider the defendants' history with Scott, Michael, and Cassandra Liberty when examining whether they have engaged in a pattern of conduct directed toward the plaintiff, Ms. Pylypenko.

10

The plaintiff alleges that the defendants falsely and maliciously told police that she had kidnapped Cassandra Liberty, that she was ultimately charged, and that those charges were dismissed in her favor. (Pl.'s Compl. ¶¶ 34, 59–63.) The defendants contend that while the charges were dismissed, this did not constitute a favorable termination of the proceedings for Ms. Pylypenko. To evaluate the defendants' argument and the prima facie validity of the plaintiff's case, the court must consider the docket record of the criminal charges underlying her claim. As the docket record is a public document central to the plaintiff's claim whose authenticity is unchallenged, its consideration will not convert the motion into one for summary judgment. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43, 48.

The record shows that the prosecutor dismissed the charges against Ms. Pylypenko due to insufficient evidence. (Whitman Aff. Exh. A at 3, 16–17.) There is no indication that Ms. Pylypenko objected to the dismissal. The defendants argue that this was not a favorable outcome for Ms. Pylypenko. For support, they look to the case of *Garing v. Fraser*, 76 Me. 37 (1884). In *Garing*, the Law Court held that an entry of *nolle prosequi* was not a favorable termination that could support a subsequent action for malicious prosecution. *Garing*, 76 Me. at 42. Ms. Pylypenko counters by referring to the earlier case of *Page v. Cushing*, 38 Me. 523 (1854), in which the Law Court held that a *nolle prosequi* would be a sufficient basis for the charge of malicious prosecution. *Page*, 38 Me. at 527. The Law Court did not refer to *Page* when it decided *Garing*.

The Law Court acknowledged this conflict in the 1978 case of *Bickford v. Lantay*, 394 A.2d 281 (Me. 1978). In *Bickford* the Court noted that the law was inconsistent, but declined to "determine whether to follow, or overrule, the

11

holding in *Garing v. Fraser*." *Bickford*, 394 A.2d at 283. Instead, the Court narrowly held that "the entry of a *nolle prosequi over the objection of the accused* is sufficient to prove the essential element of the tort that the criminal prosecution terminated in an outcome favorable to the plaintiff." *Id.* (emphasis in original). Following *Bickford*, the rule laid down in *Garing* appears to be in doubt.

Massachusetts addressed this question squarely in the 1984 case of *Wynne v. Rosen*, 391 Mass. 797, 464 N.E.2d 1348 (Mass. 1984). Massachusetts requires the same elements for a claim of malicious prosecution as Maine, and had followed the same rule announced in *Garing* since 1849.[4] *Wynne*, 391 Mass. at 799, 464 N.E.2d at 1350. By 1984, however, Massachusetts recognized that it had fallen among the minority. *Id.* at 799–800, 464 N.E.2d at 1350–51. The majority rule adopted by the Restatement (Second) of Torts holds that

> a criminal proceeding is terminated in favor of the accused when the public prosecutor formally abandons the proceeding by way of a *nolle prosequi* or motion to dismiss, unless such abandonment is the result of an agreement of compromise with the accused or if new proceedings for the same offense have been instituted.

*Id.* (citing Restatement (Second) of Torts §§ 659 cmt. c, 660 (1977) and collected cases). The court noted that the only other state following the older rule was Maine, and that the case of *Bickford v. Lantay*, 394 A.2d 281 (Me. 1978), had placed the rule's continuing vitality in question. *Wynne*, 391 Mass. at 799 n.3, 464 N.E.2d at 1350 n.3. "In light of overwhelming support for" the Restatement's position, Massachusetts abandoned the old rule and left Maine's company to join the majority position. *Id.* at 800, 464 N.E.2d at 1351.

If this court had to rule definitively on this point in this case, it would join Massachusetts and embrace the Restatement's rule that "the formal

---

[4] The *Garing* Court cited Massachusetts precedent. 76 Me. at 42.

abandonment of the proceedings by the public prosecutor" constitutes a favorable termination of proceedings sufficient to support a claim for malicious prosecution, absent evidence that the dismissal is inconsistent "with the innocence of the accused." *Id.* at 800–01, 464 N.E.2d at 1351; Restatement (Second) of Torts §§ 659, 660 (1977). Applying the rule to this case, the prosecutor's dismissal of the charges against Ms. Pylypenko due to a lack of evidence would be a favorable termination consistent with her innocence. She would thus have properly pleaded a prima facie case of malicious prosecution able to withstand the defendants' motion to dismiss.

The court does not need to address this question, however because Ms. Pylypenko's Count III suffers from other deficiencies revealed by the defendants' special motions to dismiss pursuant to 14 M.R.S.A. § 556. Even if Count III survived the defendants' Rule 12(b)(6) motions to dismiss, the court dismisses the claims pursuant to the defendants' anti-SLAPP motions as discussed below.

4.    Count IV: False Imprisonment

After being charged with reckless conduct, the state issued a summons to Ms. Pylypenko but mailed it to the wrong address. As a result, she failed to appear at her arraignment and was subsequently arrested and jailed. (Whitman Aff. Exh. A at 13.) Ms. Pylypenko seeks to hold the defendants liable for her imprisonment because it would not have occurred but for their allegedly false and baseless police reports. However, these allegations only show that the defendants invoked the legal process against the plaintiff. As a general rule, the defendants must have taken some independent action of their own before they can be said to have falsely imprisoned the plaintiff. *Holland*, 2000 ME 160, ¶ 19, 759 A.2d at 212. "Even if [the defendants'] actions in resorting to police help were

13

without justification, [they] cannot be liable to [Ms. Pylypenko] for false imprisonment." The defendants' motion to dismiss Count IV is granted.

In sum, the court grants the defendants' motions to dismiss on Counts II and IV for intentional infliction of emotional distress and false imprisonment, and on Ms. Pylypenko's invasion of privacy claims. The court denies the motions to dismiss Counts I and III for defamation and malicious prosecution.

## II. The Defendants' Special Motions to Dismiss Pursuant to 14 M.R.S.A. § 556

Maine's anti-SLAPP legislation was created to provide certain targeted defendants with expedited relief from punitive litigation. A SLAPP suit, or Strategic Lawsuit Against Public Participation, "is litigation without merit filed to dissuade or punish the exercise of First Amendment rights of defendants." *Morse Bros., Inc. v. Webster*, 2001 ME 70, ¶ 10, 772 A.2d 842, 846 (quoting *Lafayette Morehouse, Inc. v. Chronicle Publ'g Co.*, 44 Cal. Rptr. 2d 46, 48 (Cal. Ct. App. 1995)). SLAPP plaintiffs do not intend to win their suits, but rather to punish activists and whistleblowers by imposing delay, distraction, and litigation expense. *Id.* While classic SLAPP litigation was "directed at individual citizens of modest means for speaking publicly against development projects," the anti-SLAPP legislation protects a much broader range of activity. *Id.* (quoting *Duracraft Corp. v. Holmes Prods. Corp.*, 427 Mass. 156, 161, 691 N.E.2d 935, 940 (Mass. 1998)). The statute defines the protected "right to petition" to include:

> [A]ny written or oral statement made before or submitted to a legislative, executive or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive or judicial body . . . ; or any other statement falling within constitutional protection of the right to petition government.

14

14 M.R.S.A. § 556 (2009); *see Schelling v. Lindell*, 2008 ME 59, ¶ 11, 942 A.2d 1226, 1230.

The statute operates by allowing defendants to file a "special motion to dismiss" that the court will hear "with as little delay as possible." § 556; *Schelling*, 2008 ME 59, ¶ 6, 942 A.2d at 1229. The defendant bears the initial burden of "showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." *Duracraft*, 427 Mass. at 167–68, 691 N.E.2d at 943.[5] "Once the defendant demonstrates . . . that the statue applies, "the burden falls on the plaintiff to demonstrate that the defendant's activity (1) was without 'reasonable factual support,' (2) was without an 'arguable basis in law,' and (3) resulted in 'actual injury' to the plaintiff." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d at 1229. After this shift, the court views the evidence in the light most favorable to the moving defendant because the non-moving plaintiff bears the burden of proof. *Morse Bros., Inc.*, 2001 ME 70, ¶ 18, 772 A.2d at 849.

1.    Count I: Defamation

Defendant Bennett moves under section 556 to dismiss Count I; Ms. Copp does not seek to do so in her special motion. As he did in his Rule 12(b)(6) motion, Mr. Bennett argues that any defamatory statements he made about Ms. Pylypenko were communicated in his professional capacity as Ms. Copp's attorney in connection with ongoing litigation. As such, they constitute "statement[s] made in connection with an issue under consideration or review by

---

[5] Massachusetts's anti-SLAPP legislation is "nearly identical to 14 M.R.S.A. § 556" and the Supreme Judicial Court of Maine has freely looked to Massachusetts precedent for guidance in its interpretation. *See Moores Bros., Inc.*, 2001 ME 70, ¶ 15, 772 A.2d at 848 (citing and explaining *Donovan v. Gardner*, 50 Mass. App. Ct. 595, 740 N.E.2d 639, 642 (Mass. App. Ct. 2000)).

a . . . judicial body" and section 556 applies. For support he notes that the complaint admits that he was representing Ms. Copp in ongoing "divorce, parental rights and responsibilities, and other varied and extensive litigation involving Scott Liberty" at the time in question. (Pl.'s Compl. ¶ 7.) He also offers his own affidavit in which he claims that he never made the alleged statements "to a third party outside of [his] legal representation of Darlene Copp in ongoing litigation matters . . . ." (Bennett Aff. ¶ 5.)

Mr. Bennett has not met his burden to establish that the plaintiff's Count I is based solely on protected petitioning activity. Ms. Pylypenko continues to argue as in her complaint that Mr. Bennett made the slanderous statements for personal reasons unrelated to his representation of Ms. Copp. The defendant has not provided any evidence to refute this other than his own conclusory statement.

At this juncture the court does not have any evidence of when, where, or why the alleged slanderous statements were made. The record only reveals that Mr. Bennett may have made them to Cassandra Liberty, and that they deal with material that may have been relevant to some issue in litigation. "[T]hat a statement concerns a topic that has attracted governmental attention, in itself, does not give that statement the [petitioning] character contemplated by the statute." *The Cadle Co. v. Schlichtmann*, 448 Mass. 242, 254, 859 N.E.2d 858, 866–67 (Mass. 2007) (quoting *Global NAPs, Inc. v. Verizon New England, Inc.*, 63 Mass. App. Ct. 600, 605 (2005)) (quotations omitted).

Without more information the court cannot say whether Mr. Bennett made the statements solely in his capacity as an attorney, as he concludes, or as part of an "attempt to take over Scott Liberty's former role in the Copp

16

household," as Ms. Pylypenko asserts. (Pl.'s Compl. ¶ 15.) As Mr. Bennett has not shown that there is not a substantial non-petitioning related basis for Ms. Pylypenko's claim, he has also failed to show that 14 M.R.S.A. § 556 applies to the plaintiff's Count I. His special motion is thus be denied as to Ms. Pylypenko's defamation claim.

2.    Count III: Malicious Prosecution

Mr. Bennett and Ms. Copp both argue that Count III for malicious prosecution should be dismissed pursuant to their special motions brought under the anti-SLAPP statute. The defendants have successfully shown that the malicious prosecution claim is based solely on their petitioning activities. The claim arises entirely out of two incidents in which the defendants allegedly told the police that Ms. Pylypenko had helped Cassandra Liberty run away from home, and on one occasion had dragged Ms. Copp with her car. Reporting an alleged crime to the police is clearly the sort of petition to a government body that section 556 is designed to protect, and there is no other basis for the claim. *See Benoit v. Frederickson*, 454 Mass. 148, 908 N.E.2d 714 (Mass. 2009) (reporting rape to police is protected petitioning activity); *McLarnon v. Jokisch*, 431 Mass. 343, 344–45, 348–49, 727 N.E.2d 813, 815, 818 (Mass. 2000) (mother's call to police to report perceived violation of a restraining order and subsequent efforts to extend order were petitioning activity protected by anti-SLAPP legislation).

The burden thus shifts to Ms. Pylypenko to show that the defendants' actions "(1) [were] without 'reasonable factual support,' (2) [were] without an 'arguable basis in law,' and (3) resulted in 'actual injury' to the plaintiff." *Schelling*, 2008 ME 59, ¶ 7, 942 A.2d at 1229. Most of the evidence Ms. Pylypenko submitted to support her case deals with prior legal battles between the

17

defendants and Scott or Cassandra Liberty, and is not relevant here. The affidavits that are relevant focus on whether or not Ms. Pylypenko actually engaged in the accused conduct. For example, Cassandra Liberty testifies in her affidavit that Ms. Pylypenko was not driving the car that allegedly dragged Ms. Copp on November 30, 2008. (Pl.'s Exh. 12, Cassandra Liberty Aff. ¶ 4.) This evidence and the argument Ms. Pylypenko constructs from it miss the point. The question is not whether Ms. Pylypenko actually engaged in criminal conduct, but whether the defendants had a reasonable basis to provide her name to the police.

When the plaintiff's evidence is examined for its relevance to the current question, it reveals that the defendants likely did have a reasonable basis to suspect Ms. Pylypenko on the night of November 30, 2008. In her affidavit, Cassandra Liberty states that the woman who picked her up that evening was driving a silver Volvo and was young, blond, and Russian. (Pl.'s Exh. 12, Cassandra Liberty Aff. ¶ 4.) Through the affidavit of Thomas Hallett, Ms. Pylypenko has submitted the police records from that evening. (Pl.'s Exh. 6.) These show that Ms. Pylypenko was 27 years old at the time of the incident and has blond hair with blue eyes. (Pl.'s Exh. 6, Hallett Aff. Exh. 4.) Given that the incident occurred quickly and after dark, the defendants would have some factual basis to believe that Ms. Pylypenko was the driver, even if she did own a different sort of car.

Regarding the incident on October 30, 2008, Ms. Pylypenko has only offered her own affidavit denying that she was present at Ms. Copp's household. Ms. Copp has countered with an affidavit claiming the opposite. Drawing all favorable inferences in the defendants' favor, this "she-said-she-said" argument falls short of the affirmative showing section 556 requires Ms. Pylypenko to

18

make. *See Moores Bros., Inc.*, 2001 ME 70, ¶¶ 18, 20, 772 A.2d at 850. Since Ms. Pylypenko has failed to meet her burden, both defendants' special motions to dismiss are granted as to Count III, malicious prosecution. Because the evidence Ms. Pylypenko offered actually supported Ms. Copp's argument that she had reasonable grounds to report the plaintiff to the police, the court grants Ms. Copp's request for attorney's fees pursuant to 14 M.R.S. § 556, for fees incurred in relation to the special motion.

The only remaining claim is Count I, for defamation, against both defendants.

**The entry is:**

The defendants' Rule 12(b)(6) motions to dismiss are granted on Counts II and IV, and on the plaintiff's claims for invasion of privacy. Defendant Jeffrey Bennett's special anti-SLAPP motion to dismiss pursuant to 14 M.R.S.A. § 556 is denied on Count I. Both defendants' special motions to dismiss are granted on Count III.

DATE: _Friday 23, 2011_

_____
Roland A. Cole
Justice, Superior Court

OLENA PYLYPENKO VS JEFFREY BENNETT ET AL

UTN:AOCSsr  -2009-0141509                      CASE #:PORSC-CV-2009-00690

------------------------------------------------------------------------

01 0000003142          HALLETT, THOMAS F
   75 MARKET STREET SUITE 502 PO BOX 7508 PORTLAND ME 04112
   F      OLENA PYLYPENKO                      PL      RTND    12/31/2009


02 0000002062          THALER, JEFFREY
   100 MIDDLE ST PO BOX 9729 PORTLAND ME 04104-5029
   F      JEFFREY BENNETT                      DEF     RTND    01/25/2010


03 0000000035          WHITMAN, JOHN
   465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545
   F      DARLENE COPP                         DEF     RTND    01/25/2010

STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO: CV-09-690
RAC-CUM- 12/16/2011

OLENA PYLYPENKO,

Plaintiff,

v.                                          **ORDER**

JEFFREY BENNETT

and

DARLENE COPP

Defendants

Plaintiff's motion to disqualify counsel, defendant Darlene Copp's motion to treat Count III of her counterclaim as an affirmative defense, and plaintiff's motion to dismiss the case without prejudice for failure to file Report of ADR Conference are before the court. The court will consider each matter separately.

## MOTION TO DISQUALIFY COUNSEL

### 1. Background

Plaintiff Olena Pylypenko is the wife of Scott Liberty. Between December 2006 and May 2009 Attorney Martha Gaythwaite represented David van Dyke and Berman & Simmons, P.A., in a legal malpractice action brought by Mr. Liberty. Mr. van Dyke had been Mr. Liberty's attorney during his divorce and spousal torts cases. Ms. Gaythwaite is now representing defendant Jeffrey Bennett in several cases against Mr. Liberty and various members of his family, including this case.

In a separate case, Mr. Liberty also filed a motion to disqualify Ms. Gaythwaite as counsel for Mr. Bennett. The Superior Court denied the motion to

1

disqualify counsel. PORSC-CV-05-66/CV-03-421 (Me. Super. Ct. Cum. Cty. Oct. 28, 2011). An appeal is currently pending before the Law Court.

## 2. Discussion

"'The standard of review for orders disqualifying or refusing to disqualify counsel is highly deferential.'" *Estate of Anna L. Markheim v. Markheim,* 2008 ME 138, ¶ 27, 957 A.2d 56 (quoting *Casco N. Bank v. JBI Assoc., Ltd,* 667 A.2d 856, 859 (Me. 1995)). The plaintiff asserts that this court should defer its decision on the motion to disqualify until the Law Court has ruled on Mr. Liberty's appeal. The court has declined this option and will rule based on the current law.

In order to disqualify counsel the evidence must support two findings.[1] *Morin v. Me. Educ. Ass'n,* 2010 ME 36, ¶ 9, 993 A.2d 1097. First, the "disqualification must serve the purposes supporting the ethical rules." *Id.* Second, the party moving for the disqualification must show "that continued representation by the attorney would result in actual prejudice." *Id.* at ¶ 10. The "actual prejudice" requirement is an intentionally stringent standard requiring the moving party to point to "specific, identifiable harm" she will suffer if the representation continues, not just a mere allegation that the attorney holds some confidential information. *Id.*

Here, Mrs. Pylypenko has not demonstrated actual prejudice. While Ms. Gaythwaite may have acquired confidential information about Mr. Liberty in a prior representation, Mrs. Pylypenko has not demonstrated how she is specifically harmed by this information. The court denies the motion.

---

[1] The plaintiff argues for the application of the *Markheim* test instead of the *Morin* test. *See Estate of Markheim,* 2008 ME 138, ¶¶ 23–24, 957 A.2d 56. The *Markheim* test does not apply in this case, however, because the plaintiff is not a former client of Ms. Gaythwaite.

2

## MOTION TO TREAT COUNT III AS AN AFFIRMATIVE DEFENSE

Defendant Darlene Copp filed a motion to treat Count III of her counterclaim as an affirmative defense or, in the alternative, to dismiss the count. Count III is a defamation claim regarding an exchange that took place between the plaintiff and the District Attorney on November 30, 2008. (Copp's Countercl. 4.) The counterclaim was filed on March 22, 2011. Realizing that the statute of limitations governing defamation bars this claim the defendant asserts that the court should treat the claim as an affirmative defense.[2] *See* 14 M.R.S. § 753 (2010) (providing a two-year statute of limitation for defamation claims). The court may treat a counterclaim as a defense "if justice so requires." M.R. Civ. P. 8(c).

Alternatively, defendant Copp requests that the court dismiss Count III pursuant to M.R. Civ. P. 41(a)(2). The court may dismiss a claim upon the claimant's request if the dismissal does not prejudice the other party. *See ITV Direct, Inc. v. Healthy Solutions, LLC*, 445 F.3d 66, 70 (1st Cir. 2006) (upholding a refusal to dismiss due to third-party's interests); *Holbrook v. Andersen Corp.*, 130 F.R.D. 516, 519 (D. Me. 1990) ("While the basic purpose of Rule 41(a)(2) is to allow a plaintiff to dismiss an action without prejudice to future litigation, the dismissal must not unfairly jeopardize the defendant's interests. Accordingly, the dismissal should in most instances be granted, unless the result would be to legally harm the defendant." (quoting 5 J. Moore et al., *Federal Practice* ¶ 41.05(1) (2d ed. 1988))); Charles Harvey, *Maine Practice Series* § 41:1 (3d ed. 2011).

---

[2] Regarding the treatment as a defense, the defendant argues "Ms. Copp's allegation of defamation would not be an affirmative claim against Ms. Pylypenko; but if Ms. Pylypenko were to prevail on her surviving claim of defamation, then Ms. Copp's affirmative defense of defamation would give rise to the potential opportunity for a set-off against the Plaintiff's similar claim." (Mot. Treat Ct. III Aff. Def. 1.)

The plaintiff opposes this motion and asserts that Count III should be dismissed pursuant to the anti-SLAPP statute so that she can obtain attorney's fees.[3] This argument has a basis in judicial equity since the defamation claim against defendant Copp was dismissed under the anti-SLAPP statute with the court awarding attorney's fees.

The court should not reinterpret Count III as an affirmative defense because justice does not require such a reinterpretation. Instead the reinterpretation would allow the plaintiff to assert arguments that would otherwise be barred by the statute of limitations or, potentially, the anti-SLAPP statute. Additionally, dismissing Count III does prejudice the plaintiff since it removes her ability to assert a claim for attorney's fees under the anti-SLAPP statute when a similar claim for attorney's fees has been successful against her.

## MOTION TO DISSMISS THE CASE WITHOUT PREJUDICE

On October 18, 2011, this court issued an Order for Failure to File Alternative Dispute Resolution (ADR) Notification and imposed $150 sanctions on the plaintiff's counsel. The order said that this case would be dismissed without prejudice unless the parties took specified steps towards the ADR process within 15 days. CUMSC-CV-2009-690 (Me. Super. Ct., Cum. Cty., Oct. 18, 2011). No progress has been reported in the ADR process. The plaintiff asserts that this case, including the counterclaims, should be dismissed without

---

[3] On August 11, 2011, the plaintiff filed a special motion to dismiss Count III based on the anti-SLAPP statute's application to the claim and the fact that the court had dismissed the plaintiff's defamation claim regarding statements the defendant made to police. (Pl.'s Special M. Dismiss 1–2.) This special motion is currently stayed pending the resolution of the motion at hand. The motion to treat Count III as an affirmative defense was filed August 31, 2011.

4

prejudice. *See Merrifield v. Hadlock*, 2009 ME 1, ¶¶ 1, 3, 961 A.2d 1107 (upholding the Superior Court's dismissal due to failure to file an ADR notification).

During a conference in chambers the case was stayed pursuant to the motion to disqualify counsel. Therefore, the court will vacate the prior order and return the $150 payment to plaintiff's counsel. Parties have 30 days from the date of this order to fulfill with the requirements set forth in the October 18 order.

**The entry is:**

1. Plaintiff's motion to disqualify counsel is denied.

2. Defendant Copp's motion to treat Count III as an affirmative defense or to dismiss the motion is denied.

3. Plaintiff's motion to dismiss the case without prejudice is denied.

4. The October 18, 2011, Order for Failure to File ADR Notification is vacated and the associated fine will be returned to counsel.

DATE: December 15, 2011

Roland A. Cole
Justice, Superior Court

5

OLENA PYLYPENKO VS JEFFREY BENNETT ET AL
UTN:AOCSsr  -2009-0141509                    CASE #:PORSC-CV-2009-00690
-------------------------------------------------------------------------

01 0000007223          BENNETT, JEFFREY
   121 MIDDLE ST SUITE 300 PO BOX 7799 PORTLAND ME 04112-7799
   F    JEFFREY BENNETT                          DEF       LMTD    03/25/2011

02 0000000402  ATTORNEY DETROY, PETER
   ADDR 415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
   F  FOR OLENA PYLYPENKO                         PL        RTND    04/27/2011

03 0000002811  ATTORNEY GAYTHWAITE, MARTHA
   ADDR 25 PEARL STREET PO BOX 4726 PORTLAND ME 04112-4726
   F  FOR JEFFREY BENNETT                         DEF       RTND    05/31/2011

OLENA PYLYPENKO VS JEFFREY BENNETT ET AL
UTN:AOCSsr  -2009-0141509                          CASE #:PORSC-CV-2009-00690
----------------------------------------------------------------------------

04 0000003142          HALLETT, THOMAS F
   75 MARKET STREET SUITE 502 PO BOX 7508 PORTLAND ME 04112
   F    OLENA PYLYPENKO                          PL        RTND    12/31/2009

05 0000007322          PIERCE, RUSSELL
   415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
   F    OLENA PYLYPENKO                          PL        RTND    04/27/2011

OLENA PYLYPENKO VS JEFFREY BENNETT ET AL
UTN:AOCSsr  -2009-0141509                          CASE #:PORSC-CV-2009-00690
--------------------------------------------------------------------------

04 0000003142            HALLETT, THOMAS F
_____
    75 MARKET STREET SUITE 502 PO BOX 7508 PORTLAND ME 04112
_____
    F     OLENA PYLYPENKO                          PL       RTND    12/31/2009
_____

05 0000007322            PIERCE, RUSSELL
_____
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
_____
    F     OLENA PYLYPENKO                          PL       RTND    04/27/2011

OLENA PYLYPENKO VS JEFFREY BENNETT ET AL
UTN:AOCSsr  -2009-0141509                    CASE #:PORSC-CV-2009-00690
--------------------------------------------------------------------------

07 0000000035              WHITMAN, JOHN
    465 CONGRESS STREET PO BOX 9545 PORTLAND ME 04112-9545
    F    DARLENE COPP                        DEF      RTND    01/25/2010